# Timberlake *et als. v.* Brewer, Auditor.

*Proceeding against Defaulting Tax-Collector.*

1. *The notice to a defaulting tax-collector is both process and pleading.* In summary proceedings against defaulting tax-collectors, it is the settled practice to regard the notice of the motion for judgment as serving the double purpose of process and pleading. But the technical precision and accuracy of a declaration at common law is not required.

2. *Its allegations should be reasonably certain.*—It is sufficient when the liability of the defendant, which is sought to be enforced, is stated with ·

[Timberlake et als. v. Brewer, Auditor.]

reasonable certainty, and the defendant is fairly apprised of the cause of action, and the court informed of the judgment it is called on to render.

3. *The court judicially knows who are the sheriffs of the different counties.*—It is not necessary that the returns on the notices should state the county of which the officer executing them was sheriff. The courts are bound to know who are the sheriffs of the different counties. But a return that bears no date is defective.

4. *Ten days notice of the intended motion must be shown by the return.* Ten days notice to the party against whom judgment is to be rendered is an essential element of the proceeding. When the fact does not appear from the return, the court is without jurisdiction. This deficiency can not be supplied by parol evidence.

5. *The certificate of the Auditor is presumptive evidence of the act or omission upon which motion is based.*—The certificate of the Auditor is presumptive evidence of the act or omission upon which the motion is founded, and of the amount due the State. It is not required by law to be based alone on the returns on file in his office; when necessary, and he must judge of the necessity, he may resort to other sources of information, and predicate the certificate on facts derived from them.

6. *Its admissibility can not be questioned on account of the information on which Auditor acted.*—The admissibility of the certificate can not be questioned, nor its force as evidence lessened, because of the sources of information on which the Auditor may have acted. It conforms to the statute if it states the omission of the tax-collector to pay the amount of taxes collected by him into the State, treasury, and the amount due the State.

7. *It is the duty of the judge of probate to make an abstract of the assessment.*—It is the duty of the judge of probate of each county, within five days after the adjournment of the board of equalization to make and certify to the Auditor a complete abstract of the assessment of all real and personal property in his county, showing the total amount and value of each class contained therein. If he discovers, after discharging the duty, that there are errors in the addition, he may lawfully correct them, and transmit a supplemental abstract to the Auditor. The abstract, when filed in the office of the Auditor, becomes a paper pertaining to the office, and is made evidence by the statute.

8. *An expert may show that the addition is correctly made.*—An expert, whether employed or not, who has examined the assessment book, and added up the entries in the different columns, may, with the book before the jury, point out the errors in addition previously made; the additions, as correctly made, and the true aggregate amount of the value of the taxable property of the county as shown by the book.

9. *The assessment book is the warrant of the tax-collector for the collection of taxes.*—The assessment book, when delivered to the collector, is an authority and warrant for the collection from each individual tax-payer of the tax assessed on property to him, whether the aggregate as shown by the certificate of the judge of probate is lessened or increased.

10. *The tax collector is, prima facie, chargeable with the taxes assssssed.* On the delivery of the assessment book to the collector, *prima facie* he became chargeable with the tax assessed to each tax-payer; and when the time allowed for collecting has expired, must be deemed to have collected it, unless he discharges himself by showing that in the mode prescribed he has obtained credit for it, as an error of assessment, or because of the tax-payer.

11. *The burden of proving the charge, when denied, rests on the plaintiff.* It is error to refuse a charge which substantially asserts that the burden of proving the cause of action devolves on the plaintiff, when it is denied, and satisfactory evidence of it must be produced or he can not recover.

APPEAL from the Circuit Court of Montgomery.
Tried before the Hon. JAMES Q. SMITH.

[Timberlake et als. v. Brewer, Auditor.]

On the 20th day of December, 1875, Robert T. Smith, Auditor of the State of Alabama, issued the following notice, viz :

"The State of Alabama, Auditor's office, Montgomery, December 20, 1875. To James C. S. Timberlake, tax-collector of Dallas county, in said State, for the year 1870, and Charles F. Seivers, Albert H. Ross, Daniel P. Gunnells, James F. Timberlake and L. G. Weaver, his securities : *Whereas*, the said James C. S. Timberlake, tax-collector of Dallas county and State aforesaid, having failed to pay into the treasury of the State, within the time prescribed by law, the sum of twenty-five thousand five hundred and fifty-two 99-100 dollars, it being the amount of taxes collected by him while tax-collector aforesaid ;

" *And whereas*, the said Charles F. Seivers, Albert H. Ross, Daniel P. Gunnells, James F. Timberlake and L. G. Weaver are the securities of the said James C. S. Timberlake, on his official bond as tax-collector of said county of Dallas, and for the year aforesaid, which said bond, for the sum of forty thousand dollars, bears date on the 22d day of April, 1870, and is payable, conditioned and approved as required by law.

" You are therefore hereby notified at the next term of the Circuit Court for Montgomery, to be holden on the first Monday in June, A. D. 1876, I shall, by the Attorney-General, move for a judgment against you in favor of the Auditor, for the use of said State, for the sum of twenty-five thousand five hundred and fifty-two 99-100 dollars, together with interest and damages thereon.

                    " R. T. SMITH, Auditor."

This notice was executed on James C. S. Timberlake, on December 20, 1875. A similar one, differing only in the names contained in it, was served on the said Seivers, on the same day.

At the next term of the Circuit Court of Montgomery county thereafter a motion for judgment was entered by the Attorney-General, in accordance with the terms of the foregoing notice. It was continued under the general order of the court " continuing all causes not otherwise disposed of."

At the December term, 1876, of said Circuit Court, on motion of the Attorney-General, Willis Brewer, the successor of Robert T. Smith as Auditor of the State, was " substituted as party plaintiff, and motion continued for service to be perfected" on the other sureties.

On May 17, 1877, Willis Brewer, the Auditor of the State,

issued to each of these sureties of James C. S. Timberlake, viz: L. G. Weaver, James F. Timberlake, Daniel P. Gunnells and Albert H. Ross, a notice similar to the one already set out, but differing from it in a part of the names contained. The notice directed to James F. Timberlake was never served, Weaver was served with process on the 18th day of May, 1877, and the notices addressed to Gunnells and Ross were returned with this endorsement:

"Executed by serving copies on Albert H. Ross and Daniel P. Gunnells.

"A. C. STEWART, Sheriff.
"J. W. JOURNEY, Deputy Sheriff."

On the trial of the motion at the June term, 1877, the plaintiff entered a discontinuance as to James S. Timberlake, "not served," and, by the Attorney-General, moved the court to enter a judgment against the other defendants.

Thereupon, Daniel P. Gunnells, Albert H. Ross, and L. G. Weaver each moved the court to be allowed to appear, by counsel, for a specified purpose. The motion was granted.

Each of the three defendants last named moved to quash the notice issued against him by Willis Brewer, Auditor, on the 17th day of May, on the grounds: *First*, that the said notice was not issued in the cause then on trial; "that said notices purported to be, and were in fact, original notices of an original motion to be made as therein stated; that said three notices, if regarded as process in the cause then on trial, were insufficient because the names of the several persons against whom the process issued, and against whom the motion was to be made, were not therein stated; and because the names of the sureties on the bond of J. C. S. Timberlake, as tax-collector of Dallas county, are not therein stated; and because said notices, and each of them is insufficient and defective." The motion to quash was overruled, and the defendant excepted.

Thereupon, the said Albert H. Ross and Daniel P. Gunnells moved the court to quash the return of the sheriff, endorsed on the notices against them, "on the ground that it does not appear from said return that said notices were received by any sheriff of the State of Alabama; nor that Stewart, who made the return, is the sheriff of any particular county in the State; nor whether the service was before or after the issuance of the paper; nor when it was nor where it was made; and that said return is wholly insufficient to show service of said notice on said defendants, or either of them, or that they are the persons named in said return."

During the consideration of this motion, "it was proved by the Attorney-General that these notices, with the sheriff's return thereon, had been in his possession for more than ten days before the trial of the said cause, and were in his possession before the commencement of this term of the court." The court overruled the motion, and the said defendants excepted.

Thereupon, the said Daniel P. Gunnells, Albert H. Ross, and L. G. Weaver declined to appear further or for any purpose than as above stated.

The said Charles F. Seivers, Albert H. Ross, Daniel P. Gunnells, and L. G. Weaver declined to appear, but made default.

The said James C. S. Timberlake pleaded the general issue,. and demanded a trial by jury. A jury was duly impanelled. "The plaintiff, by the Attorney-General, read in evidence the said five notices before mentioned; and a copy of the official bond of the said tax-collector; and also the following certificate, made by the Auditor of the State and subscribed to the account which the State of Alabama had against James C. S. Timberlake, tax-collector of Dallas county:

"I, W. Brewer, Auditor of the State of Alabama, do hereby certify that James C. S. Timberlake, tax-collector of Dallas county, State of Alabama, for the year 1870, has not paid into the State treasury the taxes collected by him as tax-collector aforesaid; that the above account is a true and correct statement of the amount due the State of Alabama by the said James C. S. Timberlake, as tax-collector as aforesaid; and that the amount due said State by the said James. C. S. Timberlake, as said tax-collector, is twenty-five thousand, five hundred and fifty-two 99-100 dollars.

"WILLIS BREWER, Auditor."

To the introduction of this certificate the defendant objected; but the court overruled his objection, and the defendant excepted. The certificate was read to the jury and the plaintiff rested his case.

The defendant then offered in evidence the book of assessments of Dallas county for the year 1870; the certificate of the judge of probate appended to the said book of assessments; a certificate of the said judge of probate sent to the Auditor of the amount of taxes due on the said assessment; and also read in evidence a "transcript from the proceedings of the Court of County Commissioners of Dallas county relative to the assessment and collection of taxes of that county."

But as no objection was made to any of the evidence, it is unnecessary to set it out in detail.

In rebuttal, the plaintiff "introduced one Haralson as a witness, who testified that in the fall of 1871 he was employed by the Commissioners Court of Dallas county to add up the said book of assessments offered in evidence as aforesaid. Pursuant to the appointment, he added up the assessments and made a report of the result of his addition to the Court of County Commissioners in the fall of 1871; but the said addition was made hurriedly, and he stated to the commissioners that it was probably incorrect." He was requested to revise the addition, and "found that it was largely incorrect." The second addition was made by him with great care, "by adding the columns from right to left and from top to bottom." By this process he ascertained the aggregate amount of the value of taxable property and items of taxation of Dallas county. He prepared a certificate, showing the amount of taxes due to be largely in excess of the statement already signed by the judge of probate, and sent to the Auditor. The judge of probate signed the certificate so prepared and transmitted it also to the Auditor of the State. To all the foregoing testimony the defendant objected; but his objection was overruled, and the defendant excepted.

On the cross-examination of the witness, evidence of the details of the examination of the book of assessments was elicited, but as no objection to such proof was made, a particular statement of it is unnecessary. But at the conclusion of his examination, the defendant moved the court to exclude from the jury the certificate of the Auditor, subscribed to the said account of the State against the defendant, Timberberlake, "on the ground that it appeared that the certificate of the Auditor was based on the said certificate" of the judge of probate, "prepared by the said Haralson as aforesaid." The court refused the motion, and the defendant excepted.

The court charged the jury that "the plaintiff was entitled to recover in this proceeding the amount of all the taxes lawfully assessed in Dallas county for the year 1870 for the State, and which were shown by the evidence to have been collected by the defendant, as tax-collector of said county, and not paid into the State treasury; and in ascertaining the said amount, the jury might consider the certificate of the Auditor, read in evidence: both certificates of L. F. Conolly (the judge of probate), read in evidence; and the book of assessments of said county for said year, and the testimony of the witness Haralson, in connection with all the other evi-

[Timberlake et als. v. Brewer, Auditor.]

dence." To this charge the defendant (Timberlake) excepted.

The defendant, among other charges, in writing, then asked the following:

" 8. The court charges the jury that the State brings their suit in this action for the breach of contract, and that it is incumbent upon the plaintiff to establish, by evidence satisfactory to the jury, first, that the contract has been broken, and, secondly, the amount of damage that has been sustained by such breach."

" 9. That the plaintiff in this action can not recover in respect of any taxes except such as were certified by the board of equalization to have been duly assessed."

The court refused to give the charges, and to each refusal the defendant separately excepted.

The jury retired and returned the following verdict in favor of the plaintiff: " We, the jury, find in favor of the plaintiff, and assess the damages at $40,000." The defendants, Ross, Gunnells and Weaver, then moved the court for an arrest of judgment against them on the grounds : *First,* that no issue as to the liability of these defendants was submitted to said jury ; *second,* the said defendants did not appear and plead to the said notice or motion in said cause, and the said cause as to the said defendants was not submitted to said jury ; *third,* that the notices in the said cause are insufficient in law to authorize any judgment against said defendants or any of them.

The court overruled the motion, and the defendants, Ross, Gunnells, and Weaver, excepted.

D. S. TROY, for the appellants.—1. The notice issued to each of the sureties did not set forth the names of the other sureties on the bond upon which the motion was based, and for that reason did not sufficiently describe the bond on which the motion was made.— *Griffin v. The Bank,* 6 Ala. 908 ; *Johnson v. Plant. & Mer. Bank,* 17 Ala. 754 ; authorities collected in 2 Brick. Dig.

2. When a judgment is sought against six joint makers of a bond, on what principle can it be contended that a complaint as to one shall describe the bond as made by the principal and one defendant surety named " et al.?" Such a declaration at common law against two of the defendants, makers of a bond, " et al." would not authorize a judgment against five defendants.—1 Chitty Plead. 256, *et seq.* The defendants, Gunnells, Ross, and Weaver, could not demur or

[Timberlake et als. v. Brewer, Auditor.]

plead, because no motion was made pursuant to the notice. In this case the motion was in fact submitted to the court and acted on at the June term, 1876, and at December term, 1876. The motion was entered in June term, 1876, against Timberlake and Seivers on notices served on them on December 20, 1875. If this had not been done the motion would have been discontinued as to them. The notices to Gunnells, Ross and Weaver were in fact *alias* notices, but there was nothing in them to indicate this fact.

The judgment against Ross, Gunnells and Weaver was rendered on the 18th of June, 1877, when the notice said that a motion would be made " at the next term of the Circuit Court for Montgomery, to be holden on the first Monday in June, 1877." It has been held that when notice stated motion would be made on the 29th, and it was made on the 30th, the judgment would be reversed.—*Barclay v. Barclay*, 32 Ala. 345. When the court sits only one week, it may not be necessary to name the day on which the motion will be made, but when, as in this case, the court sits more than one week, a notice which did not specify the day on which the motion would be made, would be clearly insufficient.—Code, § 3015.

The return of service on the notices to Ross and Gunnells was insufficient. The notices were not directed to any sheriff—and there is nothing which shows they were received by a sheriff—nor when and where they were executed, or of what county A. C. Stewart was sheriff. Moreover, there was no *date* to the return. This is a defect no presumption will supply.—1. Ark. 50 ; 2 Scam. (Ill.) 175, 176 ; 1 Nott & Mc. 171–3 ; 3 How. 70 ; 1 South (N. J.), 108. The court therefore erred in its refusal to quash the return.

The court erred in overruling the objections to the admission of the Auditor's certificate ; to the admission of Haralson's evidence ; and to the admission of the certificate of judge of probate, based on the report made by the said Haralson. The witness, Haralson, was no officer known to the law ; nor is there any law which authorizes the probate judge to make a certificate to the Auditor based upon the combined judicial and ministerial action of Haralson. The certificate of that officer, showing the amount of the assessment as ascertained by the board of equalization, had been given to the Auditor nearly two years before it was authorized by law.

And when the statute, Revised Code, 3061, declares that the certificate of the Auditor shall be presumptive evidence

.of the amount due the State, it means a certificate based on the official returns made to him.

There was no principle of law which authorized the admission of .Haralson's evidence as to the results of his addition of the book of assessments, or of admitting the certificate of the judge of probate which was prepared by Haralson. The book of assessments had been introduced by the defendant with the certificate of judge of probate after the action of the board of equilization.—Acts of 1868, pp. 328–9, §§ 101, 102.

The charge of the court was erroneous, because it authorized the jury to consider the certificate of the judge of probate; the testimony of Haralson, and the certificate of the Auditor in ascertaining the amount of taxes collected by Timberlake and not paid into the treasury. It assumed the plaintiff was entitled to recover without submitting to the jury the credibility of the evidence, and by assuming that the evidence· showed the same amount of taxes had been collected and not paid into the treasury.

The charge, number 8, can not be controverted; it is not abstract; it is not calculated to mislead the jury; on the contrary, it directs them pointedly to the issues involved. The other charges present substantially the objections made to the admission of the testimony of Haralson; the certificate of the judge of probate, and the Auditor's certificate.

The plaintiff went to trial on the issue tendered by Timberlake, without taking a judgment by default against the· defendants, who refused to appear and plead. This was erroneous.—Tidd's Practice, 894–5.

JOHN W. A. SANFORD, Attorney-General, and DAVID CLOPTON, for the appellee.

BRICKELL, C. J.—This is a summary proceeding, under sections 3059–61 of the Revised Code, against a tax-collector,. and the sureties on his official bond, for a failure to pay into the State treasury the amount of State tax collected by the collector in 1870. In proceedings of this character, it is the settled practice to regard the notice of the motion for judgment as serving the double purpose of process and pleading. While as pleading it will be insufficient, unless it shows distinctly every fact on which the plaintiff's right of action, and the liability of the defendant depends, the technical precision and accuracy of a declaration at common law, or of the corresponding pleading, a complaint under the Code is not required. It is enough, when the liability of the defend-

[Timberlake et als. v. Brewer, Auditor.]

.ant which is sought to be enforced is stated with reasonable certainty—when the defendant is fairly apprised of the cause of action, and the court informed of the judgment it is called on to render. The rules of the common law in reference to variance, have but a limited application in such a proceeding.—*Lyon v. State Bank*, 1 Stew. 442; *Colgin v. State Bank*, 11 Ala. 222. The notices issued to Weaver, Gunnells, and Ross, vary from the original notice, in no other respect than that they are directed to each one of them, and not to all the makers of the bond, and do not aver who are the other co-makers. The date and amount of the bond— the default of the principal for which a recovery is claimed, are averred as in the original notice. These notices, when served, must be filed with, and become parts of the proceedings in the suit commenced by the original notice. It is not possible to doubt that each defendant was reasonably informed of the precise cause of action, upon which the motion for judgment would be made, and the court could not hesitate as to the judgment which should be rendered, if the facts stated in the notices were proved. This is all the statute contemplates.

2. The statute does not in express terms require that the notice shall be in writing, nor is the mode of giving it prescribed. Ten days notice of the motion is its only requisition. The notice serves the purpose of its process—it is its service, for the period of ten days before the motion is made, which gives the court jurisdiction of the person of the defendant, and authority to proceed to hear the motion.

The returns on the notices are not insufficient because they do not state the county of which the officer executing them was sheriff. The courts are bound to know who are the sheriffs of the different counties; and if they were not, the mere statement by a person returning process that he was sheriff of a particular county, would not be evidence of the fact.—*Snelgrove v. Br. Bank Mobile*, 5 Ala. 295. But the returns on the notices to Gunnells and Ross were insufficient, because without date. Ten days notice to the party against whom judgment is to be rendered, is an essential element of the proceeding. The fact does not appear from the return, and the court was without jurisdiction to proceed to judgment against them. Nor could this deficiency be supplied by parol evidence. The return is the act of the officer, and must be in writing, and complete in itself. It can not rest partly in parol, and partly in writing. When deficient, it

may be amended, but the amendment must be made by the officer under the direction of the court.

3. The certificate of the Auditor is by statute made presumptive evidence of the act or omission upon which the motion is founded, and of the amount due the State.—Rev. Code, § 3061. The Auditor is charged with the superintendence of the fiscal affairs of the State, and with the duty of auditing and adjusting the accounts of all public officers, keeping a regular account with every person in each county in the State, who is by law authorized to collect and receive any part of the public revenue. It is contemplated by the statute, that he will diligently inquire as to the amounts of the public revenue derived from taxation, which may be received by each probate judge, and each tax-collector. If the officers on whom the duty is cast, make proper returns and certificates to his office, documentary evidence will generally be found in the office, on which he may make the certificate which becomes presumptive evidence. The duty may be neglected by these officers, or may be performed negligently, or so imperfectly, with such little regard to accuracy, as not to furnish him the requsite information. There is no indication in the statutes of any purpose to confine him to these sources of information, reducing his certificate to a mere statement of the facts which they disclose. Though he may accept them as sufficient, and usually they may be,— when necessary, and he must judge of the necessity, he may resort to other sources of information, and predicate the certificate on the facts derived from them. The duty he is required to perform, is diligent inquiry as to the amount of the public revenue derived from taxation, received by the judge of probate, or the tax-collector, and a certificate of the amount either has failed to pay into the State treasury. The certificate becomes presumptive, not because of the sources of information on which the Auditor may predicate it, but because it is made in obedience to law, in the performance of official duty, and under the sanction of official oath.

Nor can an inquiry be indulged, and a controversy entertained as to the admissibility of the certificate, or its force as evidence lessened, because of the sources of information on which the Auditor may have acted in making it. The point of controversy, and of inquiry, is, are the facts stated in it true—has the officer committed the default to which the Auditor certifies. Such default may have been committed, though the evidence on which the Auditor proceeds was mere hearsay, or his sources of information may not be such

as the law would regard as the best and highest. The objections made to the certificate of the Auditor in the Circuit Court were properly overruled. It conforms to the statute—it states the omission of the tax-collector to pay the taxes collected by him into the State treasury, and the amount due the State. Of these facts it was admissible and presumptive evidence, compelling the defendants to repel the presumption by evidence, not merely in disparagement of the information on which the Auditor acted in making it, but of its untruth.

4. Nor was there any ground of objection to the abstract of assessment certified to the Auditor by the judge of probate. The revenue law of 1868 established in each county a board of equalization, charged with the duty of examining the assessment book which the assessor was required to return to the probate judge. It was also the duty of the board to hear complaints from the tax-payers as to erroneous or excessive valuations of taxable property, and to equalize the valuations, so that they would be uniform throughout the county. Of this board, the judge of probate was *ex officio* chairman, and it was his duty when the board had concluded the examination and equalization, to certify its action on the book of assessment, with a statement of the aggregate value of the taxable property of the county as determined by the board. It was also his duty, within five days after the adjournment of the board, to make and certify to the Auditor, a complete abstract of the assessment of all real and personal property in his county, showing the total amount and value of each class of taxable property contained therein. The book of assessments having been examined by the board of equalization, the judge of probate appended a certificate of the action of the board, and which, also, stated the aggregate value of the taxable property of the county. The certified abstract of the assessment was also forwarded to the Auditor; and the collector had paid into the State treasury the amount of the State tax as shown by it. These facts having been shown in defence, the Auditor was permitted to show errors in the book of assessment—not in the valuations of property, nor in the omission of persons or property subject to taxation —but errors in the additions of the valuations contained in the book, which, when corrected, increased the aggregate value of the taxable property of the county as shown in the book. It was not proposed to add to or subtract from the entries in the book—mere arithmetical errors in the additions of the several columns stating the class and value of the taxable property assessed to each tax-payer were to be cor-

[Timberlake et als. v. Brewer, Auditor.]

rected.   These corrections having been made, the judge of probate certified a second abstract of the assessment to the Auditor, showing the value of the taxable property as contained in the assessment, and it is to the admission of this abstract as evidence objection was made.   The point of objection is, that there was no authority to re-examine the book of assessment and correct these errors, after the book had ·been examined by the board of equalization, and the certificate of the judge of probate had been appended, showing the aggregate value of the taxable property of the county—and that the judge of probate had no authority, having once made a certified abstract of the assessment to the Auditor, to make a second correcting the errors of the first.   The duty of adding the valuations of each species of taxable property in the county, and thus disclosing in an aggregate sum the total amount of the assessment, was not devolved on the board of equalization.   Their duty was confined to the correction of erroneous or excessive valuations, thereby producing an uniform and equal valuation throughout the county.   This duty was in its nature *quasi* judicial, and when it was once performed, however erroneously, it could not be corrected after the adjournment of the board, unless it was by some direct proceeding in a proper tribunal, if there was any, having jurisdiction.   The duty of adding together the different valuations of the taxable property, showing the aggregate of the assessment, was merely clerical, imposed in the first instance on the assessor.—Pamph. Acts 1868, 311, § 37.   After the board of equalization had acted, their action, if it varied the valuations of the assessor, would necessarily vary the aggregate of the assessment.   Then, it was the duty of the judge of probate to certify on the book of assessment the aggregate value of the taxable property of the county.   The form of certificate embodied in the statute, states that the board have *determined the aggregate value;* but the determination was not by performing the mere clerical duty of adding the valuations; it was by the changes of the assessor's valuations the board may have ordered.   The duty of certifying the aggregate value of the taxable property devolved alone on the probate judge, and included the duty of ascertaining it.   All error in ascertaining and certifying it is merely clerical. The error can work injury to no one—the valuations found on the book are not changed—no new burthen is imposed on the tax-payer, and no right affected.   The power and duty of the officer to correct such an error can not be doubted— the means of correction are found in the book—there is no

necessity for a resort to extrinsic evidence, and the aggregate value of the taxable property, is simply made to correspond to the particular and several valuations found in the book.

The duty of the judge of probate in the preparation and certificate of the abstract of assessment, which he was required to forward the Auditor, was also merely clerical. The abstract was intended simply to furnish evidence, which should remain on file in, and become a document of, the Auditor's office, by which the total amount and value of each class of taxable property of the county as shown by the book of assessment, could be ascertained. It was subject to correction at all times by reference to and comparison with the book of assessment, which in the absence of statutory provision, would be the highest and best, and so long as it could be produced, the only evidence of these facts. That an erroneous abstract can not be corrected by the probate judge— that he and the State are inexorably bound by it—that it is irreparable and irremediable, is a proposition which can not be admitted. The duty of the judge is not performed—his power is not exhausted—until he has certified to the Auditor *a complete abstract of the assessment of all real and personal property in his county, showing the total amount and value of each class of taxable property contained therein, extended into a column, and the total amount of such sums, so extended.* An incomplete abstract—imperfect, erroneous, misleading, because the valuations are not properly extended, or not properly added, is not the abstract it is his duty to furnish, and does not lessen his duty or power to furnish one complete. If several are certified, and a controversy arises as to which is correct, it can be determined by the book of assessment— not by the mere additions and items of aggregate amounts which may be found therein—but by the several entries of taxable property, and its valuation, as assessed to each taxpayer. The abstract when filed in the office of the Auditor, becomes a paper pertaining to the office and is made evidence by the statute.—Code of 1876, §§ 3047–49.

5. It is not material in what capacity Haralson acted in making the examination of the book of assessment. The capacity was not official—the duty performed was not strictly ministerial, nor was it judicial, as these terms are applied to official duty; it was simply clerical—that of an accountant. It may have been performed voluntarily without request from, and without the cognizance of the judge of probate, or of the Commissioners Court. Though it was performed at the request of the Commissioners Court, the results of the exam-

ination do not thereby become legal evidence. But it was not the result of the examination which was proved or offered in evidence. Having examined the assessment book, added up the entries in its different columns, with the book before the jury, he pointed out the errors in addition previously made—the additions as correctly made, and the true aggregate amount of the value of the taxable property of the county, as shown by the book. He was not required to give any construction to the written entries, nor to declare their legal effect. On the well-settled rule, and the reason of it, that when the characters in which a paper is written are obscure or difficult to be deciphered, the evidence of persons, whom practice and experience have made skilful, will be received to aid the court or jury in arriving at a true reading of the instrument, the evidence was admissible.—*Stone v. Hubbard*, 7 Cush. 595; *Sheldon v. Benham*, 4 Hill, 597; 2 Whart. Law of Ev. § 972.

6. The assessment book when delivered to the collector, is the authority and warrant on which he proceeds in the collection of taxes. Not an authority and warrant for the collection of the amount of the taxes as shown by the aggregate value of the taxable property as certified by the judge of probate. It is an authority and warrant for the collection, from each individual tax-payer, of the tax assessed on property to him—whether the aggregate as shown by the certificate of the judge is lessened or increased. The revenue law of 1868 pointed out a particular mode, by which he could obtain credit because of errors in the assessment book, or because of the insolvency of the tax-payer. *Prima facie* on the delivery to him of the assessment book, he became chageable with the tax assessed to each tax-payer; and when the time allowed for collecting has expired, must be deemed to have collected it, unless he discharges himself by showing that in the mode prescribed he has obtained credit for it as an error of assessment, or because of the insolvency of the tax-payer. At his instance, in answer to the demand of the State, regularity, or legality of assessment, is not an inquiry. The substantial inquiry is, has he, by virtue of his office, received money for the State. If he has, it is not his province to dispute the right of the State to receive it, unless he can show that the tax-payer has demanded, and he has refunded it.—*Thompson v. Stickney*, 6 Ala. 579; *Boring v. Williams*, 17 Ala. 510; Cooley on Taxation, 500. The errors in the additions on the assessment book, and in the first certified abstract to the Auditor, were not material. The inquiry was, what

[Bank of Kentucky v. Jones et al.]

was the amount of the State tax the collector had received. This amount was ascertainable not by the mere aggregate of the valuations on the tax-book—or by the certified abstract to the Auditor—but if these varied from the separate items assessed to each tax-payer, by a true aggregation of these items. These items he had authority to collect, and it is not for him having collected them, to discharge himself by paying into the treasury, not these items, but the aggregate amount of the assessment as shown by the erroneous additions of some other officer, which these greatly exceed. Profiting by such errors, the law does not tolerate.

The rulings of the Circuit Court in the admission, and in the refusal to exclude evidence, was in conformity to these views, as was the instruction given the jury to which an exception was reserved. There was no error in the refusal of the instructions requested by the appellant, except that numbered eight. The burden of proving the cause of action devolves on the plaintiff, when it is denied, and satisfactory evidence must be produced, or he can not recover. This is the substance of the charge, and we can discover no reason for refusing it. The remaining question, relating to the mode of taking and entering judgment, will not probably arise again, and its determination is unnecessary.

For the errors pointed out the judgment must be reversed and the cause remanded.