# The State *v.* McBride.

*Bill in Equity by State, against Defaulting Tax-Collector and Sureties on Official Bond.*

1.   *Summary judgment against defaulting tax-collector and his sureties ; repeal of statutes omitted from Code of 1876 ; exception as to existing ac-*

*tions, rights, and remedies.*—The statutory provisions giving a summary remedy by notice and motion, in the Circuit Court of Montgomery county, against a defaulting tax-collector and the sureties on his official bond (Rev. Code, §§ 3059–60), having been omitted from the Code of 1876, are no longer in force; but, by express exception (§ 10), this repeal not affecting "any existing right, remedy, or defense," as to which the former statutes are continued in force, the summary remedy may be pursued where the default occurred before the Code of 1876 became operative.

2. *Same ; conclusiveness of judgment.*—A judgment by default, in a summary proceeding against a tax-collector and the sureties on his official bond, is conclusive as to the amount then due from the collector to the State; and neither he nor his sureties can, in any subsequent litigation with the State, claim credits which might have been set up in defense of that suit.

3. *Interest against tax-collector ; burden of proof as to credits.*—The tax-collector being required to make a final settlement with the auditor on or before the first day of May, for the taxes of the preceding year (Code, § 414), he and his sureties are liable for interest on the amount due from that day; and being *prima facie* chargeable with the full amount of taxes shown by the assessment-books, the *onus* is on him to show credits to which he was entitled, but which were not allowed on the *ex-parte* statement of his accounts by the auditor.

4. *Credits for errors and insolvencies ; equitable relief against statutory requirements.*—The statute having prescribed the mode and the time at and in which the collector must present and claim credits, or an abatement of the amount of taxes with which he stands *prima facie* chargeable, on account of errors and insolvencies (Code, § 241); if he fails to comply with this requirement, he can not afterwards claim these credits, when sued in equity, because the assessor's books were not delivered to him in sufficient time to enable him to comply with it. The general principle applies, that a court of equity can not grant relief against an express statutory provision, involving a matter of public policy.

5. *Exceptions to register's report.*—Exceptions to the register's report under a reference, not accompanied with proper references to those parts of the evidence relied on to sustain them, as required by the rules of practice (Rule No. 93; Code, p. 174), are properly overruled.

APPEAL from the Chancery Court of Lawrence.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed, on the 26th August, 1881, in the name of the State of Alabama, against J. K. McBride, tax-collector of Lawrence county during the years 1875, 1876 and 1877 ; and against the sureties on his official bond as such collector, and several other persons who held or claimed property which, as the bill alleged, was liable for the default charged against said McBride ; and it sought a discovery from the several defendants as to those different pieces of property, an account against the collector and his sureties for alleged defaults in the payment of taxes collected or due for the years 1876 and 1877, and a decree condemning the property to the satisfaction of the amount ascertained to be due. For the alleged default as to the taxes for the year 1876, a judgment by default, in a summary proceeding by notice and motion, was rendered in the Circuit Court of Montgomery, on the 3d June, 1878, in the

[The State v. McBride.]

name of Willis Brewer, as auditor of public accounts, for the use of the State, against the said McBride and the sureties on his official bond, for $4,044.27, "with interest and damages thereon," amounting in all to $5,515.87; and a copy of this judgment, as "Exhibit B," was made a part of the bill. Certified statements of the collector's account with the State for the years 1876 and 1877 respectively, as made out by the auditor from the records of his office, were also appended to the bill, as exhibits "C" and "D" respectively; the balances thereby shown against him being $4,044.27 for the year 1876, and $2,659.71 for the year 1877.

Answers were filed by the several defendants, denying the validity of the said judgment, and alleging that, on a full and fair statement of the collector's accounts, a balance would be found in his favor; and they specified various items for which credits were claimed, but which were not allowed in the auditor's statements of the accounts. Among the items so specified were the following: $3,500 paid to the county school superintendent, at different times, on the warrants of the auditor, instead of $2,000 as allowed by the auditor; $324.96, as "errors in account for 1875," which was alleged to have been entered by the auditor as a debit, instead of a credit; $365.66, for interest on State obligations received in payment of taxes; $212.40, on account of insolvent poll taxes; the several items for the year 1876 aggregating $4,228.75, and showing a balance of $184.48 in favor of the collector. Of the taxes for the year 1877, a credit was claimed for $2,950.50, "turned over by said McBride, at the end of his term, to S. D. Houston, his successor in the office of tax-collector;" $280.50, paid to D. C. White, county school superintendent, on warrants of the auditor; and other items, aggregating $3,468.21, and showing a balance of $555.54 in favor of the collector. In excuse of any apparent neglect or default, the answer of McBride contained the following allegations: "The trouble in respondent's said official term has grown, mainly, out of two circumstances, which he could not control, and in respect to which the complainant, through her officers, has been in default. These are—1st, that the tax-books for the year 1876 were not furnished to him as soon as the law contemplates and directs, and, by reason of this default, respondent did not have sufficient time to make his collections, and ascertain the list of insolvencies, in time to have the same allowed by the court of County Commissioners; and, 2d, that said books were so deficient, imperfect, and inaccurate, that the full taxes could not be collected by them."

The cause being submitted for a decretal order of reference, by consent, the register was ordered to state the account for

the year 1876 "in a double aspect"—that is, 1st, assuming the judgment to be valid and conclusive; and, 2d, disregarding it, "charging the collector with all proper charges, as shown by the report of the auditor and other legal testimony, and crediting him with all proper credits;" and in stating the account for the year 1877, he was ordered to "charge said McBride with all proper charges, and credit him with all proper credits."

Under this order of reference, the register reported—1st, as to the taxes for the year 1876, assuming the judgment to be valid, the balance against the collector, after deducting credits to which he was entitled, was $1,413.95, and, disregarding the judgment, a balance of $475.20 resulted in his favor; and as to the taxes for the year 1877, a balance of $629.05 was due to the collector. To the report and account as thus stated, the complainant reserved the following (with other) exceptions:

1. For that the register allowed said McBride a credit of $3,650, as paid to D. C. White, school superintendent, being $2,150 more than was allowed by the auditor on the settlement for the taxes of 1876; "whereas he should only have allowed $1,500 as a proper and legal credit.—See Exhibits C and D to bill, and depositions of McBride and White."

3. For that the register allowed a credit for $189.96, "amount of supplemental tax not allowed by the auditor (see 3d item in statement of account for 1876); whereas said sum should not have been allowed, nor any other sum in lieu thereof."

4. For that the register allowed a credit for $413.50, "excess of polls assessed and given said McBride for the year 1876, and mentioned in the 4th item of the statement of account for 1876; whereas he should not have allowed said sum, nor any part thereof.—See Exhibits C and D to bill."

5: In allowing said McBride a credit for $212.40, "insolvent polls, for which no credit was allowed on settlement with auditor, mentioned in 5th item of statement of account for 1876; whereas said sum should not have been allowed, nor any other sum in lieu thereof.—See Exhibits C and D to bill."

6. In allowing McBride a credit for $91.94, "as mentioned in the 6th item of the statement of the account for 1876; whereas he should not have allowed said sum, nor any other sum in lieu thereof.—See Exhibits C and D to bill."

7. In allowing McBride a credit for $649.92, "excess of credit over debit for 1875, mentioned in 8th item of statement of account for 1876; whereas said sum should not have been allowed as a credit, nor any other sum in lieu thereof.—See Exhibits C and D."

9. In allowing a credit for $140.72, "mentioned in 10th

[The State v. McBride.]

and last item of statement of account for 1876; which said sum ought not to have been allowed, nor any other sum in lieu thereof.—See Exhibits C and D to bill."

10. In allowing a credit for $2,950.50, "tax-list turned over to S. D. Houston, and mentioned in 1st item of statement of account for 1877; whereas said sum should not have been allowed, nor any part thereof.—See Exhibits C and D to bill, and McBride's testimony."

11. In allowing a credit for $116.21, "mentioned in 2d item of account for 1877; also, to allowance of $39, in third item of said account; also, to credit for $280.50, mentioned in 4th item of said account; also, to allowance of $82 as credit, mentioned in 5th item of said account; also, to allowance of $148.51, mentioned in 6th item of said account. The register should not have allowed a credit for any of said sums.—See exhibits to bill."

12. "In the statement of the account of 1876 by the register, making said judgment the basis of his report, complainant excepts to the allowance of a credit for $2,150, with interest thereon, as shown in 1st item of said account; also, to credits allowed for $365.66 and $23.29, with interest thereon, $125.12, as shown in 2d item; also, to allowance of credit for $189.96, with interest thereon, as shown in 3d item; also, to allowance of credits for $413.50 and $212.40, with interest thereon, as shown in 4th item; also," to credits shown by 5th and 6th items, in similar words. "The register should not have allowed any of said items as credits, nor any sum in lieu thereof; and complainant excepts to the action of the register in going behind the judgment, and in allowing any of said credits."

13. For that the register "failed to charge said McBride with interest on the amount shown to be due by the certified transcript from the books of the auditor—to-wit, $4,044.27 for the year 1876, and $2,975.71 for 1877.—See exhibits to bill."

The chancellor overruled these exceptions, and confirmed the register's rulings; and he further held that the judgment was void. The account being re-stated, discarding the judgment entirely, the register reported a balance of $655.15 in favor of said McBride; and this report being confirmed, the chancellor rendered a final decree dismissing the bill.

The overruling of the complainant's several exceptions above set out, the decree holding the judgment void, and the final decree, are now assigned as error.

THOS. N. McCLELLAN, Attorney-General, and C. C. HARRIS, for appellant.—(1.) The repeal of the statutory provisions giving a summary remedy by notice and motion, in the Circuit Court

of Montgomery, against a defaulting tax-collector and his sureties, by their omission from the Code of 1876, does not affect the validity of the judgment rendered against McBride and his sureties. The default occurred prior to the repeal of these provisions, and the right to pursue this summary remedy was expressly reserved by the 10th section of the Code. As to vested rights, this section was entirely unnecessary, since they are within the constitutional guaranty against subsequent adverse legislation; but it expressly applies to existing remedies for existing rights, and, as to them, continues the former laws in force. As to the construction and effect of similar statutory provisions, see *Brotherton v. Brotherton*, 41 Iowa, 114; *Wordsworth v. Wordsworth*, 40 Iowa, 450; 41 N. J. Law, 458; 10 Wendell, 98; 11 Wendell, 167; 4 Denio, 374; 2 Sandf. 231, 636; 10 Kans. 115; 11 Kans. 52; 77 Indiana, 227; *Hart v. Ross*, 64 Ala. 96. (2.) The judgment being valid, it is conclusive as to all items of debt and credit entering into the account for the year 1876; and the court below erred in allowing or inquiring into any items embraced in that account. (3.) The allowance of a credit to McBride for $2,950.50, "amount of tax-lists turned over to Houston," his successor in office, is a palpable disregard and violation of the statutory provisions regulating the duties and liabilities of tax-collectors. A collector is chargeable, *prima facie*, with the full amount of taxes shown by the assessor's books.—*Lott v. The State*, 69 Ala. 147; *Timberlake v. Brewer*, 59 Ala. 118. The manner in which he may relieve himself and his sureties from this liability, on account of "errors and insolvencies," is particularly prescribed. Code, § 421. The fact that the books were not delivered to him by the assessor, in time sufficient to enable the County Commissioners to pass upon these matters, can not excuse him or his sureties. He might have had a *mandamus* against the assessor, or might maintain an action on his bond; and his failure to resort to these remedies is negligence, which can not excuse his own default. As to any hardship he or his sureties may suffer on account of these taxes turned over to his successor, a special remedy has been given to him by act of the General Assembly.—Sess. Acts 1878–9, p. 485. (4.) The judgment being conclusive as to all matters of account included in the taxes of 1876, the only remaining items are in the account for 1877; and the complainant relies, as to them, on the several exceptions to the register's report.

W. P. CHITWOOD, *contra*.

SOMERVILLE, J.—The chancellor erred, we think, in holding the judgment recovered in the Circuit Court of Mont-

[The State v. McBride.]

gomery county, against McBride and the sureties on his official bond as tax-collector, to be a void judicial proceeding. The case of *Carmichael v. Hays*, 66 Ala. 543, is authority, it is true, for the proposition, that sections 3059–3060 of the Revised Code of 1867, under which this summary judgment was recovered, are no longer a part of the general code of laws of the State ; the omission to incorporate them in the Code of 1876, at the time of its adoption, operating to repeal them. The case of *Ulmer v. The State*, 61 Ala. 208, cited by appellees' counsel, goes no further.

The question now before us was not considered or decided in either of those cases, because it was not involved. The rights of the State in this cause accrued prior to the adoption of the Code of 1876, and, therefore, prior to the repeal of these sections of the Code of 1867. The inquiry now is, whether the remedy afforded the State by these sections is not preserved by section 10 of the present Code, which reads as follows : " This Code *shall not affect any existing right, remedy*, or defense ; nor shall it affect any prosecution now commenced, or which shall be hereafter commenced, for any offense already committed. *As to such cases, the laws in force at the adoption of this Code shall continue in force.* Local, private, or special statutes, and those public laws not of a general and permanent nature, and those relating to the militia, are not repealed by this Code. But, subject to the foregoing provisions, all statutes of a public, general and permanent nature, not included in this Code, are repealed."

This section is so plain in meaning, as scarcely to admit of any room for construction. It means, most obviously, that past transactions, both civil and criminal, must be governed by past laws, or such laws as were in force at the adoption of the present Code ; that, as to existing cases, whether in suit or not, existing laws should be continued in force, as if they had never been repealed. Not only is the legislative intention thus clearly expressed, but it is emphasized, as if from abundant caution, by the declaration, that the new order of things should "not affect any existing right, remedy or defense." The effect of this section was to preserve to the State the benefit of the remedy resorted to in this case, as conferred by sections 3059 and 3060 of the Revised Code of 1867 ; the rights against the defendants having accrued prior to the repeal of these sections as a part of our general code of laws adopted in the year 1877.— *Hart v. Ross & Garner*, 64 Ala. 96.

It was not permissible for the register to go behind this judgment, in order to allow to this collector any payments, or deductions, not allowed him by the Auditor in his statement of the account for taxes collected for the year 1876. The judg-

ment was conclusive as to all these matters of defense, involving credits of every description. The collector was required by statute to make a final settlement with the Auditor, on or before the first day of May, of all his tax transactions of the year preceding.—Code, 1876, § 414. In this final accounting, the collector is *prima facie* chargeable with all the taxes shown by the assessment-book to be due the State ; and whatever credits he may be entitled to under the statute—whether for payments already made, for fees and commissions, for errors and insolvencies, for lands bought in for the State, or for any authorized expenses incurred for advertisements or otherwise—he is required to present and claim as credits at this time, and to pay over to the Treasurer the balance of the State taxes which he may have collected, after the allowance of such credits as he may be entitled to by law. The settlement would be partial, not final, if this were not so.—Code, 1876, §§ 414, 421 ; *State v. Lott*, 69 Ala. 147 ; *Timberlake v. Brewer*, 59 Ala. 108.

The evidence shows that the defendant McBride failed to make the settlement with the Auditor on or before the first day of May, which he was thus required to do by law. Hence, a suit was commenced against him and his sureties, by summary motion, in which the judgment in controversy was recovered in June, of the year 1878. The purpose of this legal proceeding was to coerce by law the making of the final settlement which McBride had neglected to make voluntarily, and thus to bring him and his bondsmen to an accounting with the State. If he or they had appeared, they might, by making proper defense, have secured the benefit of all credits, perhaps, to which they would have been entitled had the accounting have been with the Auditor in the manner required by law. No appearance was made, however, and a judgment of default was suffered by all of the defendants. This precludes the defendants from all credits, not allowed by the Auditor, which it would have been the duty of the collector to have claimed in the voluntary settlement. The judgment is *res adjudicata* as to all these, because they would have been necessarily involved, if the case had been litigated, and a failure to present them is an estoppel against now asserting any right to them in this proceeding. *Bobe v. Stickney*, 36 Ala. 482 ; Freeman on Judg. §§ 286, 272 ; 2 Brick. Dig. 145, § 205. The determination of these credits being required by law to be involved in the settlement, or accounting, which was necessary in order to ascertain the balance due by the collector, and upon which the judgment was based, it was immaterial whether they were actually claimed, or were litigated or not.—*Baker v. Cleveland*, 19 Mich. 230.

What we have said above disposes of the consideration of all the tax transactions involved between the State and the defend-

ant McBride, for and during the year 1876. We proceed further to consider the principles which seem to govern the account for the ensuing year, 1877.

The tax-collector and the sureties on his official bond would be liable to the State for lawful interest on the balance due by him on the first day of May, 1878, which was the last day allowed by law for his final settlement of the taxes of the preceding year; the collector being chargeable, *prima facie*, as we have before said, with all taxes shown by the assessment-book to be due to the State. The burden is thus cast on the collector to prove all credits which the Auditor may have failed to allow him, and to which he is lawfully entitled. This was settled in the case of *The State v. Lott*, 69 Ala. 147; and in *Timberlake v. Brewer*, 59 Ala. 108; Code, 1876, § 414.

No credit, in our opinion, should have been allowed the collector, as was done by the chancellor, for the amount due for uncollected taxes turned over by him to his successor in office. This sum is shown to be two thousand nine hundred and fifty 50-100 dollars. The statute prescribes the only authorized mode, in which the collector can relieve himself from his liability to collect such taxes, whether occasioned by the insolvency of the persons assessed, or errors in assessment. Section 421 of the Code requires, that the collector should report a list of insolvents, and of errors in assessment, to the court of County Commissioners, at the April term of each year, which must be under oath. This report is required to be subjected to " a rigid and searching examination" by this tribunal, which, after making proper corrections, is authorized to credit the collector with the taxes due the county, as they appear on such corrected lists; and the probate judge is then required to certify such lists to the Auditor, " who shall allow the collector credit therefor on his final settlement for the State taxes due thereon."—Code, 1876, § 421. After these proceedings, the authority of the collector to collect the taxes due upon such lists is abrogated, and the probate judge is required to place them in the hands of notaries public and justices of the peace in the various beats of the county, who are thus constituted as to such lists, *pro hac vice*, tax-collectors, and clothed with all necessary powers for this purpose.—Code, § 421.

It is not insisted that the tax-collector has conformed to the requirements of this statute. The contrary is shown by the evidence, and is candidly admitted. The argument made, however, is, that the tax-assessor of Lawrence county failed to turn over the assessment-books in sufficient time for the collector to discharge the duties required of him by law, so that he could not make a report of such list of insolvencies, or errors of assessment, under oath, to the April term of the Commisioners

[Mangan v. The State.]

Court. This affords no ground upon which a court of chancery can grant the desired relief to the party in default. The penalty complained of is visited by the statute; and the rule is well settled, that "a court of equity has no power to disregard, or set aside, the express terms of statutory legislation, however much it may interfere with the operation of common-law rules." 1 Pomeroy's Eq. Jur. § 458. Such courts, in other words, have no power to grant relief which is repugnant to both the policy and terms of an express statute. The exercise of such a jurisdiction might lead to the abrogation of any statute, by excepting supposed "hard cases" from the operation of conditions or penalties imposed by its provisions, and would thus be, to use the language of Mr. Story, "in contravention of the direct expression of the legislative will."—2 Story's Eq. Jur. (12th Ed.) § 1326.

We do not consider the other exceptions to the register's report, which were overruled by the chancellor. They were properly overruled, if for no other reason, on the ground that the appellant failed to note the evidence, or parts of evidence, relied on in support of these exceptions, "with such designation, and marks of reference, as to direct the attention of the court to the same," as required by the 93d Rule of Chancery Practice.—Code, 1876, p. 174; *Mooney v. Walter*, 69 Ala. 75; *Mahone v. Williams*, 39 Ala. 202; *Crump v. Crump*, 69 Ala. 156.

The decree of the chancellor, being erroneous in the particulars above pointed out, must be reversed, and the cause remanded.