# Kilpatrick *v.* Henson.

## Bill in Equity to Foreclose Mortgage.

1. *Equitable relief against settlement of accounts.*—A settlement of accounts is not conclusive on the parties, but may be opened in equity on proof of fraud, imposition or undue advantage; but the burden of proof is on the party complaining, and relief will only be granted on precise and definite allegations, supported by clear and satisfactory evidence.

2. *Same* —When a settlement of accounts has been deliberately made, a note or other security being voluntarily given for the ascertained balance, the presumption is in favor of its fairness and correctness, and the transaction will not be opened on probable or conflicting evidence; and unexplained acquiescence, accompanied with knowledge, or the means of acquiring knowledge of material facts, and subsequent dealings based on the correctness of the settlement, may operate a bar to equitable relief against it.

3. *Same; case at bar.*—In this case, a settlement between two parties, between whom no confidential relation existed, having been closed by note and mortgage; a second settlement afterwards made, including subsequent dealings, and closed by new note and mortgage; a suit in chancery to enjoin a sale under the mortgage compromised between an assignee and the mortgagors, by which the assignee relinquished valuable rights secured by the mortgage, and granted an extension of time; *held,* that on bill filed to foreclose the mortgage, after the lapse of seven years, the mortgagors could not impeach the settlement, on account of omissions and errors in the account, of which they were not ignorant at the time the settlement was made.

4. *Defenses against foreclosure.*—On bill to foreclose a mortgage, any defense may be set up which would be available in an action at law on the note, except the statute of limitations.

5. *Usury as defense*—When usury is set up in defense of a bill to foreclose a mortgage, it must be alleged specifically and particularly, stating the terms of the agreement and the amount of usurious interest.

6. *Exceptions to register's rulings and report.*—Exceptions to the rulings of the register on the statement of an account, when dependent on the testimony before him, are properly overruled, unless taken and reserved as required by the rules of practice; but an erroneous ruling on a question of law may be revised.

7. *Taxes on mortgaged lands.*—When a mortgage provides that the notes given for rents shall be delivered to the mortgagee, and that the taxes shall be deducted from the rents, the taxes constitute a charge on the lands, and, if paid by the mortgagor, he can not claim a credit for the payment.

[Kilpatrick v. Henson.]

APPEAL from Chancery Court of Clarke.
Heard before the Hon. JNO. A. FOSTER.

The opinion states the facts.

JNO. Y. KILPATRICK, for appellants.

A. KILPATRICK, ANDERSON & BOND, D. C. ANDERSON, and
WATTS & SON, contra.

CLOPTON, J.—The bill, which is brought by appellee,
seeks the foreclosure of a mortgage on real estate, executed
by appellants, January 31, 1874, to Joseph Noble to secure
a note for forty-five hundred dollars, which note and mort-
gage were assigned by Noble to complainant. On allegations
of deceit, undue advantage, fraudulent calculations, imposi-
tion, oppression, and charges of compound and illegal in-
terest, the defendants by answer seek to open and set aside
the settlement, and reinvestigate the accounts and previous
dealings between the parties, which entered into the note
and mortgage. The defendants allege, that on a fair and
correct settlement, they were not indebted to Noble at the
time the note and mortgage were given. On the evidence,
the chancellor made a decree opening the settlement, and
directing the register to make and state an account, taking
as a basis a sum of money borrowed by two of the defend-
ants from Noble in March, 1870. Both parties being dis-
satisfied with this decree, and also the final decree on the
coming in of the report of the register, the defendants took
the appeal, and complainant, by consent, makes cross-assign-
ments of error.

While the settlement is not conclusive on the defendants,
and does not preclude them to invoke the ample and un-
doubted power of a court of equity to open it, and to
re-examine the accounts and transactions, when there has
been fraud, imposition, or undue advantage, which vitiates
it, and by reason thereof an incorrect and false balance is
ascertained, the power is exercised with caution, and with a
due regard to the certainty and security of business trans-
actions between parties sui juris, when no confidential rela-
tion exists. Relief will only be granted on precise allega-
tions, and clear and satisfactory proof; the burden of proof
being cast on the party complaining. Acts of fraud or
undue advantage, or errors or omissions not alleged will not
be considered, though there may be evidence tending to
prove them. When a settlement of accounts has been de-
liberately made, and a note or other security voluntarily
30

given for an ascertained balance, the transaction will not be opened on probable or mere conflicting testimony. The presumption is in favor of the fairness and correctness of the settlement, and that the independent security expresses the truth. This presumption grows stronger in proportion to the length of time unexplained, the party assailing it, has acquiesced in its truth.—*Blum v. Mitchell*, 59 Ala. 535. And long acquiescence unaccounted for, with knowledge or the means of acquiring knowledge of the material facts connected with the intervention of agreements and dealings having reference to the subject matter of the settlement, and based on, and inducing action by, the ostensible recognition of the written securities executed on the footing up as agreed and fixed, may be sufficient to operate a bar to its subsequent impeachment.

The testimony is in painful and irreconcilable conflict. A decision of the questions involved does not require review and comparison of its parts. None of the witnesses are impeached except by opposing testimony. On the charitable presumption of the honesty of the several witnesses, and attributing the evident antagonisms to failure of memory, or misunderstanding, the exigencies of the case may be met, and the controversy determined on the undisputed facts and settled principles of equity, without engaging in a hopeless effort to reconcile the contradictory statements, and without deciding the weight and credibility of the conflicting testimony. The undisputed facts are: Noble and two of the defendants, William and Alexander Kilpatrick, in December, 1869, formed a partnership to carry on a mercantile business. On March 9, 1870, the Kilpatricks executed to Noble notes for the aggregate sum of thirty-one hundred dollars borrowed of him, payable January 1, 1873, with interest from January 1, 1870, and as security, executed a mortgage on their interest in the real estate embraced in the mortgage in controversy. Noble purchased April 1, 1870, the interest of the Kilpatricks in the partnership, and credited the mortgage debt with fourteen hundred and twenty-eight 91–100 dollars as received in merchandise, accounts, and store furniture and fixtures. On February 15, 1873, the Kilpatricks gave Noble two notes for the aggregate sum of twenty-six hundred and twenty-three 06–100 dollars, payable January 1, 1874, executing another mortgage on the same real estate ; and an entry was made on the mortgage of March, 1870, as follows : "Canceled in full by renewal of mortgage of February 15, 1873." G. W. Kilpatrick, another of the defendants, united in the execution of the note and mortgage. Noble having adver-

[Kilpatrick v. Henson.]

tised the lands for sale under this mortgage, the parties met
on the day and at the place of sale, and after much discus-
sion and negotiation, a settlement was made, on which a
note for the balance and the mortgage in controversy were
executed by the three Kilpatricks at the time, and the sale
postponed to await the execution of the mortgage by the
other two defendants, which they signed a few days there-
after.    Though there is a controversy, whether other
alleged items of debt were included, it is admitted that
about seven hundred dollars were added to the previous in-
debtedness, and included in the note and mortgage, being
an amount which Noble at that time paid for and at the
instance of the Kilpatricks.

All the allegations of fraud and undue advantage, as made
in the answer, relate to omissions to allow large credits on
the mortgage debt of March, 1870, which the defendants
claim they were entitled to, and should have been deducted,
when the notes and mortgage of February, 1873, were exe-
cuted.    Though it is said that the defendants are inexperi-
enced in business transactions, it is not pretended that they
do not possess intelligence enough to detect errors and
omissions, and to judge when a correct settlement is made,
and a true balance ascertained, the items being few in num-
ber and large in amount.    No confidential relation existed,
whereby they were peculiarly subjected to imposition, and
no special reason assigned, why they should have reposed
more confidence in Henson, who seems to have been the
principal actor in making the settlements than any other
person of reputed good character with whom they were
dealing.    They then knew, or had the means of knowing,
the material facts as fully as they now do.    They do not
pretend to have derived any subsequent information, that
the credits now claimed were omitted.    In their answer,
they state that when the note and mortgage in controversy
were executed, they knew they did not legally owe Noble
the amount therein expressed.    At the time of their execu-
tion, no claim of omitted credits was made, so far as the
record informs us.    With knowledge of the facts, they
executed the notes and mortgage of February, 1873, the
note and mortgage of January 1, 1874, and have acquiesced
in both until the filing of the present bill, December 20,
1880, a period of more than seven years ; thus continuously
increasing the strength of the presumption in favor of their
fairness and correctness.    Threats to sell the property un-
der the mortgages, though the mortgagors were financially
embarrassed, is not such oppression as will vitiate the set-
tlements.    In such case, the law furnishes ample remedy

[Kilpatrick v. Henson.]

for the redress and prevention of any wrong and injustice. In the absence of any explanation of this long acquiescence, all the evidence must be considered in view of the presumption against errors, omissions, or undue advantage, and in favor of the correctness of the settlements, which presumption, it has been said, " it is of greater importance now to consider, since parties are allowed to testify as witnessess, and the direct evidence is most often in irreconcilable conflict." Accrediting all the witnesses with equal honesty and truth, the presumption must prevail, when the evidence is in direct and irreconcilable conflict.—*Blum v. Mitchell, supra ; Paulling v. Creagh,* 54 Ala. 646.

A party desiring to rescind a contract on the ground of fraud, must move within a reasonable time after its discovery ; and if with the knowledge of the fraud, he enters into other and additional stipulations in reference to the contract, inconsistent with the right to rescind, by which it is recognized and suffered to continue as an existing contract, he will be regarded as having waived the fraud, and the right to abandon.— *Griggs v. Woodruff,* 14 Ala. 9; *Thompson v. Lee,* 31 Ala. 292. In 2 Pom. Eq. Jur. § 965, the author says: " When a party, with full knowledge, or at least with sufficient notice or means of knowledge of his rights, and of all the material facts, freely does what amounts to recognition of the transaction as existing, or acts in a manner inconsistent with its repudiation, or lies by for a considerable time, and knowingly permits the other party to deal with the subject-matter under the belief that the transaction has been recognized, or freely abstains for a considerable length of time from impeaching it, so that the other party is thereby reasonably induced to suppose that it is recognized, there is acquiescence, and the transaction, although originally impeachable, becomes unimpeachable in equity."

The mortgage contains provisions that the time of foreclosure shall be extended for five years from the date, on condition that the mortgaged premises shall be rented for each of the five succeeding years, and notes taken payable to the mortgagee, and that he be paid fifty cents per cord for the wood cut off the lands ; and if these conditions were not complied with, the mortgagee has the right to foreclose at any time after January 1, 1875. Noble, claiming that the conditions had not been performed, advertised the lands for sale after January 1, 1875. Thereupon, the mortgagors filed a bill against Noble, praying that he be enjoined from selling. The contents of the bill, and the grounds on which the injunction was asked, are not disclosed by the record ; but we infer from it that the ground was the want of author-

[Kilpatrick v. Henson.]

ity to sell under the terms of the mortgage. The mortgage having been assigned to complainant during the pendency of the bill, an agreement was afterwards made and entered into, by which complainant agreed, in consideration that the bill would be dismissed without prejudice, and complainants therein would pay the costs of the suit, to make no attempt to foreclose the mortgage until after the lapse of five years from January 31, 1874. The bill was accordingly dismissed, and complainant made no attempt to foreclose until after the expiration of the stipulated time. By the agreement complainant relinquished her right to demand that the land be rented out, and the rent annually applied to the mortgage debt, and to be paid for the wood cut. The mortgagors received the benefit of the extension of the time to foreclose, and have since 1875 occupied, or received the rents for the premises.

The agreement was a compromise of a pending suit, was based on a recognition of the validity of the mortgage, and the complainant acted on it as such.

The balance, ascertained by the statement of February, 1873, having been carried into the settlement of January, 1874, the mortgagors, by giving a note and mortgage for the amount as then fixed, affirmed the previous settlement. The subsequent agreement, by which the mortgagors were relieved from the obligation to pay the annual rent, and for wood, and obtained an unconditional extension of the law day, was a recognition of the mortgage as valid and existing, and reasonably induced the complainant to deal with the subject-matter under the belief that the transaction, which resulted in the execution of the mortgage in controversy, was recognized. These acts, and the long unexplained acquiescence disentitle the defendants to have the settlement of February, 1873, opened, and the precedent accounts and transactions re-investigated; and to this extent and for this purpose, the settlement of January, 1874, should be considered and treated as a settled transaction.

The mortgage, of which the bill seeks a foreclosure, remains, however, subject to any defense, other than the statute of limitations, which would avail in an action at law on the note—such as usury, want of consideration, and payment. When a mortgagor desires to make the defense of usury against a bill to foreclose, he is required, by the established rule of pleading, to set up the usury specifically and particularly, stating the terms of the agreement, and the amount of the usurious interest.—*Munter v. Linn*, 61 Ala. 492. The answer does not conform to the rule. The allegations are insufficient, too loose, general, and indefinite.

We therefore decline to consider the question of usury on the evidence, until properly presented by pleading. It is manifest there is not an entire want of consideration. Without expressing any opinion as to a partial want, which can be more satisfactorily determined by the register, before whom witnessess may be examined orally, we may remark, that if the note for the rent of the McCarty land entered into and constituted a part of the consideration, as Henson testifies, and it is shown that the credit endorsed thereon is in the handwriting of Noble, or was made prior to the settlement by any one authorized, it necessarily results there is want of consideration *pro tanto*. The same observation applies to any other alleged indebtedness erroneously included.

As the chancellor properly overruled the exceptions to the register's report, dependent on testimony before him, because not filed in compliance with the Rules of Chancery Practice, we can consider none of them, except those relating to the allowance of credits for taxes, which depend on the application of a rule of law, and were allowed by the chancellor in restating the account.—*State v. McBride*, 76 Ala. 51. The mortgage expressly provides, that the taxes shall be deducted from the rents. They constitute a charge on the lands. Had they been paid by the mortgagee, they would have become an additional lien under the mortgage, and the mortgagors would have been compelled to pay them on redemption. These credits were improperly allowed as payments.—*Morrow v. Turney*, 35 Ala. 131; 2 Jones on Mort. §§ 1180; 1134.

There is no error in the decree of which appellants can complain. On the cross assignment of errors by appellee, decree

Reversed and cause remanded.