## GEARY *v.* PARKER.

### Opinion delivered June 11, 1898.

UNLAWFUL DETAINER—FAILURE OF LESSOR TO PAY RENT.—Mansf. Dig., §
3348, provides that "when any person  *  *  *  shall lawfully and
peaceably obtain possession [of demised land], but shall fail or refuse
to pay the rent therefor when due, and after demand made in writing for
the delivery of possession thereof,  *  *  *  such person shall be guilty
of unlawful detainer." Under a lease which provided that the rent
should be payable quarterly in advance, the lessor, upon the lessee's
failure to pay a quarter's rent in advance, made demand upon him for
delivery of possession. Within three days after such demand the lessee
tendered the full amount of the rent for the ensuing quarter. In a sub-
sequent action of unlawful detainer the court instructed the jury that if
any rent was due at the time the written demand for possession was
made, they should find for the lessee. *Held* erroneous.

Appeal from Garland Circuit Court.

ALEXANDER M. DUFFIE, Judge.

*Greaves & Martin* and *Geo. L. Basham*, for appellants.

The court erred in permitting the original answer of de-
fendants to be read in evidence, because: (1) It had been dis-
placed by the filing of an amended answer. 33 Ark. 253; 37
Cal. 154; 51 Cal. 222; 71 Cal. 126; 76 Cal. 340; 41 Fed. 172;
2 How. (Miss.) 824. (2) Because it was not signed or ver-
ified by the defendant *himself.* 2 A. K. Marshall (Ky.), 428,
828; S. C. 12 Am. Dec. 431; 133 U. S. 473; 135 Mass. 28;
62 U. S. 397; 115 U. S. 363; 54 Mass. 253; 95 Mass. 460.
The court erred, also, in admitting parol evidence to establish a
reservation of part of the demised premises as free from rent.
35 Ark. 559; 55 Ark. 115; 50 Ark. 539. Appellant did not
exert himself to demand rent for that portion of the premises.
53 Ark. 200; 54 Ark. 508. Nonpayment of rent is not a cause
for forfeiture of a lease, unless it is expressly so provided. 41
Ark. 532. A tender of rent due, before the action was
brought, leaves the landlord without right to further prosecute
his suit for unlawful detainer, based upon the failure to pay the
rent when due. 36 Ark. 28; 17 Fed. 776; 59 Ark. 405; 6

Lawson's Rights Rem. & Pr. 4675; Taylor, Landl. & Ten. §§ 391–394, 633, 634–729; 65 N. Y. 314; 73 Ind. 168; 81 Va. 118; Woodfall, L. & Ten. 414–417; 130 Pa. St. 235. Tender is a proper plea, under the modern usage of pleading, in such cases as this. 25 Cal. 348; 76 Cal. 131; 77 Cal. 253; 20 Ia. 495; 18 Conn. 81; 56 Miss. 672; 116 Ind. 511; 24 Neb. 131.

*Wood & Henderson,* for appellees.

The bill of exceptions was never filed as a record in this case. This is imperative. 58 Ark. 110. Where there is an exception in gross to a number of instructions given by a trial court, this court will not review or reverse the rulings of the trial court thereon, if any of the instructions are good. 28 Ark. 18; 32 Ark. 224; 39 Ark. 339; 38 Ark. 539; 43 Ark. 391; 54 Ark. 19; 60 Ark. 256; 59 Ark. 314. So, if any part of instructions asked be bad, an exception in gross to the refusal to give them will avail nothing. 23 N. E. 470; 21 N. E. 470; 8 So. 413; *ib.* 669; 3 *ib.* 695; 5 So. 89; 30 Pac. 166; 48 N. W. 1095; 46 N. W. 352; 29 Pac. 439; 26 Pac. 6; 51 N. W. 1080; 16 So. 858; 17 S. E. 980; 7 W. Va. 232; 32 N. E. 798; 8 Enc. Pl. & Pr. 257–271, and notes. The first instruction asked by appellee was undoubtedly correct and proper. It told the jury that failure or refusal of the tenant to pay rent when due and demanded, by the landlord, in writing, was sufficient to support an action of unlawful detainer. See Mansf. Dig., § 3348; 57 Ark. 302. The statute abrogates the common-law rule requiring demand for the rent to be made upon the premises, at a convenient hour, etc. 1 N. W. 825; 32 Atl. 184; 28 Pac. 762; 34 N. E. 833; 75 Am. Dec. 164; 2 L. R. A. 526. To defeat a cause of action by tender, the tender must be pleaded in the answer, and kept good by bringing the money into court for the complainant. 25 Am. & Eng. Enc. Law, 932; 30 Ark. 505; 33 *ib.* 340; 34 *ib.* 582; 38 *ib.* 329; 4 *ib.* 450. Appellee's right of action was complete upon demand in writing, for possession, after rent due and refusal of appellant to yield possession. Also, the tender was insufficient because it did not include the interest due on the rent (46 Ark. 87; 36 Ark. 355) and the costs expended by appellee in serving the notice to quit. 28

Pac. 762; 25 Am. & Eng. Enc. Law, 910 and note; 77 Am. Dec. 468 and notes on pp. 474–484; 9 L. R. A. 55; 33 N. E. 518; 21 Atl. 1006. Therefore the court did not err in giving appellee's second and fourth instructions. The occupancy of the room by appellee's mother and wife was intended to be gratuitous, and can not now be made the basis of a claim for rent. 33 Ark. 215. The instructions asked by appellant were properly refused. The allegation in the complaint of demand for rent, before suit, is not denied. Hence it is to be taken as true, and instructions based upon failure make such demand were properly refused. Sand. & H. Dig., § 5761; 35 Ark. 105; 46 *ib.* 132; 50 *ib.* 562; *ib.* 261. The original answer was never withdrawn, and was properly read to the jury. Nothing in said answer was prejudicial to appellant, since his tender admitted that he owed the rent. 25 Am. & Eng. Enc. Law, 941, and note. There was no error in allowing parol evidence of an understanding after the execution of the lease.

*Rose, Hemingwag & Rose*, for appellant, in reply.

The fact that the original answer was read *as evidence* is conclusive that it was no longer a part of the pleadings, and that such was the understanding of both parties at the trial. 1 Thomps. Trials, § 1027. Neither party may occupy inconsistent positions with respect to the same thing. 54 Ark. 304; 59 *id.* 312; 44 *id.* 524. It was error to allow the reading, in evidence, of the original answer. 58 Ark. 490; 13 Metc. 255. Inconsistent defenses are allowed. 35 Ark. 556. The error complained of was prejudicial. 119 U. S. 99; 110 U. S. 50. 5 Wall. 807; 17 *id.* 630–639. Having made the plea of tender the basis of one of their instructions, appellees can not deny its presence in the case. 57 Ark. 632. Where the suit is for property, and a tender has been made, it is not necessary to bring the money into court. 74 Cal. 250; 21 N. Y. 343; 100 *id.* 248. In a motion for new trial, it is not necessary that exceptions be taken separately. 59 Ark. 465.

G. W. WILLIAMS, Special Judge. On the 9th of November, 1889, the appellee, Parker, leased lot No. 3 of block 58 of the city of Hot Springs to the appellant, John Geary, for a

term of fifteen years, at an annual rental of $70, payable quarterly in advance, the appellant having the option at any time within the fifteen years of purchasing it for $1,100. An action of unlawful detainer was brought by the appellee, the complaint alleging that the appellant entered into possession and then so continued, but that he failed and refused to pay the rent which became due on the 9th of November, 1890, to-wit: $17.50; that he refused to recognize appellee's rights, and abandoned the contract; that on December 16, 1890, appellee made written demand on appellant for the possession of the lot, which he refused; that, by reason of the failure just named, the appellee was entitled to immediate possession.

The appellant interposed a general demurrer, which the court sustained, but, on appeal to this court by the present appellee, this ruling of the lower court was reversed on February 18, 1892. See *Parker* v. *Geary*, 57 Ark. 301.

The appellant, on March 25, 1891, before the case was remanded, filed an answer and motion to transfer to the equity docket, which motion was overruled on April 4, 1894. On May 12, 1893, the appellant filed an answer, denying that he failed and refused to pay the rent due on the 9th of November, 1890, or at any other time, or that he refused to recognize appellee's rights, or had abandoned the contract. On the next day he filed what he termed an "amendment to the substituted answer to plaintiff's complaint." In this he denies that he was indebted to the appellee in the sum of $17.50, or any other sum, for rent, and that demand was made upon him for rent upon said date. He denied that he failed to pay rent, and that the appellee was entitled to possession at the date of the notice, or at the time of bringing suit. He also alleged that the appellee failed to put him in possession of all the property, having withheld a house occupied by appellee's wife and mother; that the house had a rental value of $4 per month; and that a greater sum was due him on account thereof than $17.50. The appellee filed a motion to strike this amended answer, on the ground that it was filed after the trial began and during cross-examination of the appellee; also that the alleged eviction of a part of the premises "should not at this stage of the trial be presented as an issue in the case."

It is contended by the appellee that no exceptions were re-
served specifically to the instructions given by the court. In
the bill of exceptions they were reserved as follows: "To
which ruling of the court in giving each and every one of said
instructions so numbered first, second, fourth and fifth defend-
ant at the time excepted." In the motion for the new trial, as
follows: "Because the court erred in giving to the jury, over
the objection of the defendant, instructions numbered one, two,
four and five, as asked for the plaintiff." The cases in our reports
cited by counsel in support of their contention are those in
which the exceptions were reserved at the time in the bill of
exceptions to the instructions *en masse*, followed in the motion
for new trial in the same manner, or, having been properly re-
served in the bill of exceptions, were abandoned by failure to
make them a ground of the motion for a new trial. There
seem to be none to the effect that, where specifically reserved
in the bill of exceptions, a failure to as specifically note them in
the motion for a new trial will be an abandonment, if they are
referred to in a general manner in the motion. The real reason
for requiring specific exception is that the attention of the
trial court may be called to the particular error complained of.
The exception here is to "each and every one." The word
"every," as defined in Anderson's Dictionary of the Law, is:
"Each one of all; includes all the separate individuals which
constitute the whole, regarded one by one." The law does not
require that an objection to an instruction shall be more specific
than this. An exception to an instruction need not state the
point of exception. *McCreery* v. *Everding*, 44 Cal. 246; *Shea* v.
*Potrero, etc. R. Co.*, 44 Cal. 414. Specification of the instruc-
tion, so as to designate it, is sufficient. *Rogers* v. *Mahoney*,
62 Cal. 611. The attention of the trial judge having been
directed to each instruction separately by the original exceptions,
the motion for the new trial should be taken in connection there-
with. The reason of the rule will thus be followed. The
instructions stand in separate paragraphs, and each enunciates
some rule or rules of law. In the language of the court in
*Davenport etc. Co.* v. *City*, 13 Iowa, 237: "If any one was im-
properly refused, therefore, there was a ruling upon the law or
proposition as there stated; and as that particular proposition

was called to the attention of the court, and insisted upon by the party asking it as the law governing the case, there is no chance for surprise, nor any fair ground for claiming that the mind of the judge was not called to what it was that counsel would not have him hold." In the case of *Atkins* v. *Swope*, 38 Ark. 528, 539, looking at the language of the court, it appears that the objection first made was general, and the motion was no better. The court say: "The first ground of the motion for the new trial is that the court erred in giving the first, second, etc., instructions asked by defendants. The objection made to giving these instructions was general, embracing all of them in gross." The objections were sufficiently specific.

Some of the instructions given, to which exceptions were reserved, told the jury that if they found that any sum of money was due at the time of bringing the suit, they must find for the appellant. In determining the soundness or unsoundness of such instructions, we are called upon to consider and construe section 3348 of Mansf. Dig., the statute in existence when the suit was brought. It is as follows: "When any person * * * shall lawfully and peaceably obtain possession [of lands and tenements], but * * * shall fail or refuse to pay rent therefor when due, and after demand made in writing for the delivery of possession thereof, * * * such person shall be guilty of unlawful detainer."

The appellee contends that, under the statute, if the appellant failed to pay upon the day rent fell due, and he was notified in writing to vacate, the right of enforcement of the suit for unlawful detainer became inviolate, and that no tender, made after notice and prior to suit, could avail to defeat the right. There was no condition of forfeiture in the lease for non-payment. The decision of this court when the case was here before is cited as upholding this construction. The complaint there was good upon its face, but the answer and evidence present defenses which did not then appear.

It was shown by the evidence that the parties to the contract acted harmoniously for one year. When the appellant took possession, he assumed to pay an unpaid balance of a mortgage on the land and also the taxes, which should be deducted from his rents. These he paid, but just what amount

on the mortgage is not clearly shown. He paid $10 taxes on April 10, 1890. The appellant produced receipts as follows: $49.90, November 18, 1889; $16.00, May 19, 1890; 50 cents, June 12, 1890; 50 cents, July 4, 1890; 50 cents, August 4, 1890; $2.60 October 2, 1890. These aggregate $70, the sum due for rent one year. The appellant claimed that the sum paid for taxes did not enter into any of the receipts, and that he was due an additional credit on this account.

The appellee says he did not know who paid his taxes for that year, but knows that the appellant had credit for it in his receipts.

The appellee went to the house of appellant on November 10, 1890, and demanded rent for one year in advance, but subsequently modified his demands to rent for one quarter in advance. The appellant told him that he would meet him up town in a few days, and settle, but, failing to do so, he called again, and received substantially the same answer, and he called the third time, and asked for a copy of the lease, as he desired some lawyer to look at it, and the appellant promised to come up town in a few days, and go to his lawyer, and have the lease explained. This is the version of the appellee. The appellant says that when the 9th of November arrived he had not received credit for the taxes he had paid; that the appellant came and wanted to get the lease, claiming that there was a mortgage in there that ought not to be on it, and that he made no demand for rent at that time, and appellant sent him away, with the understanding that when he came up to town they would go before the lawyer who drew up the lease, and have him explain the points in dispute. On the 16th of December, 1890, the appellant was served with a notice to vacate the premises, and on the 19th of the same month this suit was instituted. Between the service of the notice and the beginning of the suit the appellant, who was sick, sent his wife with $17.50 to the appellee and tendered it to him, and they went over to the office of appellee's lawyers, under whose advice he refused to accept it.

It is apparent, from the conduct of the parties, that the amounts and dates of payment had no reference to the dates stipulated in the lease throughout the entire year. Notwithstanding this, the appellee claims the right to enforce the con-

tract to the strict letter of the beginning of the second year, without any prior warning to the appellant of his intention to do so, except the notice to vacate, the serving of which, it is claimed, forfeits the rights of the appellant beyond all retrieve, though. he is willing to pay and offers to pay all that is demanded of him within less than three days after service and before suit has been instituted. This is claimed because the statute mentions no period of warning to be given. We think the decision in *Little Rock Granite Co.* v. *Shall*, 59 Ark. 409, is in point, and the appellee could not, under the circumstances, ask for a strict enforcement of the contract unless there is something in the statute which would give him this right. We also think that the instructions asking the jury to find for the appellee if any sum was due from the appellant disregarded the claim of the appellant that he thought a settlement was necessary between them at the beginning of the second year, and that he was entitled to a credit in addition for taxes. . If he was really of that opinion, and was actuated in delaying payment until they could come together, this would excuse a prompt payment, of itself, unless the statute prevents it. The jury could have passed upon this, but the instructions prevented. They could have said whether his claim was made in good faith, or was a mere subterfuge.

But the appellee contends that any such defenses were eliminated by the tender, which admitted that the money was due. A tender does admit that the sum tendered would be paid, and he would be compelled to pay it, but the admission reaches no further. It does not necessarily admit the existence of the grounds upon which plaintiff bases his right of recovery. That is to be determined by the pleadings. *Griffin* v. *Harriman*, 74 Iowa, 436. Here the appellant claims that he tendered the money simply because it was claimed, and he was sick in bed, and could not attend to business, and in his pleadings denied that he really owed it.

While the statute names no period of time to elapse after the service of notice to vacate, to be allowed the tenant, yet the question remains, whether it was intended that the notice was to serve as an actual and immediate forfeiture of the lease the instant it was served, or whether it was given in order to

give him a reasonable time in which to pay or to vacate, and as a notification that the forfeiture would be claimed. "Whenever the intention of the makers of a statute can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction seem contrary to the letter of the statute." Bac. Abridg. tit. Statutes (I); *People* v. *Utica Ins. Co.*, 15 Johns. 380; *Reniger* v. *Fogossa*, Plowd. 18; *Partridge* v. *Straunge, id.* 88; 2 Inst. 64; *King* v. *Younger*, 5 T. R. 449; *Margate Pier* v. *Hannam*, 3 B. & Ald. 266; *Edwards* v. *Dick*, 4 *id.* 212. In *Jackson* v. *Collins*, 3 Cow. 89, 95, a statute prohibited sheriffs or their deputies, in whose hands executions were placed, from bidding in lands at such sales. A deputy, who was the owner of the judgment, bought in the land at the sale through the officer acting at the sale as his trustee. It was held that the sale was good, although the statute made no exception in such cases.

In Lieber's Hermeneutics, 103, it is said: "There are considerations which ought to induce us to abandon interpretation, or, in other words, to sacrifice the direct meaning of a text to considerations still weightier; especially not to slaughter justice, the sovereign object of laws, for the law itself, the means of obtaining it." Then, as illustrating the idea of the consequences of seeing only the letter of the law, the following case is given: When Lord Bentinck was Governor General of India, he abolished flogging in the native army, not having authority to do the same in the British army in the east. If a sepoy professes the Christian religion, he thereby becomes subject to the British military laws proper, evidently to raise him. A Christian sepoy deserted from his regiment, returned shortly afterwards, was tried by a court-martial, and sentenced to be corporeally punished. The commanding officer thought himself prohibited from confirming the sentence by Lord Bentinck's order abolishing corporeal punishment in the native army. He referred the subject, however, for the opinion of the judge advocate general, who gave it as his opinion that the sentence was correct, and might be carried into effect, as the general order does not extend to Christian drummers or musicians (to which prescribed trade the unfortunate individual happened to belong) and *only affects native soldiers, not professing the Christian reli-*

*gion.* The judgment, according to the letter of the law, was right, but it led to the monstrosity that the profession of the Christian religion should entitle the sepoy to three hundred lashes when the object in making him subject to the English laws was intended to be a benefit to him.

If the object of the legislature was to declare that all rights under the contract were forfeited by non-payment, it seems reasonable to suppose that they would have given the lessor the right to immediate eviction. What object the service of notice to quit could have, if he had this right, it is hard to perceive. To hold that the mere service of the notice gave this right is to attribute more potency to the serving of a paper than to the failure of payment. The notice could not have been to appraise the lessee that rent was due, because he was bound to know this from his contract. The remedy is not made a summary one. *Crow* v. *Morris*, 15 Ga. 303. The conclusion is irresistible that, in requiring a notice, it must have been to serve some purpose, and this purpose must have been to give the tenant time to fulfill his contract before suit would be brought. The legislature left the length of time to the determination of the jury, but, since that statute, have seen fit to take this away from the jury, and make the length of time arbitrary, just as they have done in the service of summons and other notices. The main object, to which all others were subsidiary, was to secure the prompt payment of rent. In *Tuttle* v. *Bean*, 13 Met. 275, where money was tendered on the day that notice was served, the court said: "As the main object of the statute apparently is to secure and enforce the payment of rent, there is, perhaps, good ground to hold that if the full amount of rent is tendered at any time before proceedings are commenced, under the landlord and tenant act, it is a good bar to such complaint."

Whether the reading of the first answer of the appellant in evidence was erroneous or not, we see no injury resulting therefrom. The following authorities probably have a bearing upon it. Newman, Plead. & Prac. 540, 551, 687; Bliss, Code Plead. § 342 *et seq.*; Pomeroy, Action and Defenses, § 724; *Fain* v. *Goodwin*, 35 Ark. 109.

The evidence introduced concerning the occupancy of the house by the wife and mother of appellee was not improper,

nor in conflict with the written contract.  If the appellant acquiesced in their occupancy after the making of the contract, it was a matter between him and them, and the jury had the province of determining whether he did or not.

For the errors indicated this case is reversed and remanded for a new trial.

BUNN, C. J., concurs.

RIDDICK, J., (concurring).  I concur in the above opinion, and in the judgment of reversal, on the ground that the court erred in telling the jury that if any rent was due plaintiff which defendant had failed to pay at the time the written demand for the possession of the premises was made, they should find for plaintiff.  The defendant claimed to have made a tender, before suit was brought, to plaintiff of all sums due.  Yet, under the instructions of the court, this tender, however full, was of no avail, if made after the demand for possession.  If the full amount due plaintiff was tendered to him before suit was brought, I think he had no right of action.

BATTLE and HUGHES, JJ., dissent.

WOOD, J., disqualified.

BATTLE, J., (dissenting.)  Under the statutes of this state, a landlord has the right to dispossess a tenant, when he is guilty of an unlawful detainer, by bringing an action against him for the recovery of the land demised.  What is an unlawful detainer?  The statute in force at the commencement of this action, so far as it is applicable to this case, is as follows: "When any person shall wilfully and with force hold over any lands, tenements or other possessions after the determination of the time for which they were demised or let to him,   *   *   * or shall fail or refuse to pay the rent therefor when due, and after demand made in writing for the delivery of the possession thereof, by the person having the right to such possession, his agent or attorney, shall refuse to quit such possession, such person shall be deemed guilty of an unlawful detainer."  Mansfield's Digest, § 3348.

The court, in its opinion in this case, assumes that this

statute needs interpretation, and, construing it, says: "Whenever the intention of the makers of a statute can be discovered, it ought to be followed with reason and discretion in the construction of the statute, although such construction seems contrary to the letter of the statute;" and quotes approvingly from Lieber's Hermeneutics, 103, as follows: "There are considerations which ought to induce us to abandon interpretation, or, in other words, to sacrifice the direct meaning of a text to considerations still weightier; especially not to slaughter justice, the sovereign object of laws, for the law itself, the means of obtaining it." The case of the sepoy, in which the letter of the order of the Governor General of India abolishing flogging in the native army was "slaughtered," and the unfortunate sepoy was sentenced to be corporeally punished, when according to the letter of the order he was not subject to the punishment imposed upon him, is cited to illustrate the wisdom of the quotation. Comments on the illustration are unnecessary.

The rule for interpreting statutes is not correctly stated in the opinion of the court. In the interpretation of statutes, "the legislature must be understood to mean what it has plainly expressed, and this excludes construction." "It has," says Mr. Endlich in his work on the "Interpretation of Statutes," "been distinctly stated, from early times down to the present day, that judges are not to mould the language of statutes in order to meet an alleged convenience or an alleged equity; are not to be influenced by any notions of hardships, or of what in their view is right and reasonable, or is prejudicial to society; are not to alter clear words, though the legislature may not have contemplated the consequences of using them; are not to tamper with words for the purpose of giving them a construction which is supposed to be more consonant with justice than their ordinary meaning. * * * Their duty is not to make the law reasonable, but to expound it as it stands, according to the real sense of the words. * * * The business of the interpreter is not to improve the statute; it is to expound it. Whilst he is to seek for the intention of the legislature, that intention is not to be ascertained at the expense of the clear meaning of the words. The question for him is, not what the legislature meant, but what its language means. * * * It is clear that, to give it a con-

struction contrary to, or different from, that which the words import or can possibly import, is not to interpret the law, but to make it; and judges are to remember that their office is *jus dicere*, not *jus dare*. Every departure from the clear language of the statute is, in effect, an assumption of legislative power by the court." Endlich on Interpretation of Statutes, §§ 4, 7, 8; *Wilson* v. *Thompson*, 56 Ark. 110; *Railway Company* v. *B'Shears*, 59 Ark. 243; *Memphis & Little Rock R. Co.* v. *Adams*, 46 Ark. 159; *Collins* v. *Karatopsky*, 36 Ark. 330.

In *Reynolds* v. *Holland*, 35 Ark. 59, this court said: "The rule to be applied in this view is: First. That the intention is to be sought in the whole of the act taken together, and in other acts *in pari materia*. If the language be plain, unambiguous, and uncontrolled by other parts of the act, or other acts or laws upon the same subject, the courts cannot give it a different meaning to subserve a public policy, or to maintain its constitutional validity. The question for the courts is not what would be wise, politic and just, but what did the legislature really mean to direct. This narrow circle embraces and circumscribes the whole ambit of the court, although within that it may move very freely in catching the intention. It may disregard the literal meaning of the words, when it is obvious from the act itself that the use of the word has been a clerical error, or that the legislature intended it in a sense different from its common meaning."

In construing the statute in question, this court holds, in its opinion delivered in this case, that a tender of payment of the rent due (according to the opinion of two of the judges, within a reasonable time after the demand for possession required by the statute, and, according to the opinion of another, at any time before the commencement of an action of unlawful detainer for the possession of the demised premises) prevents the holding of the tenant from becoming unlawful, and deprives the landlord of his right of action. In so holding the court converts the demand that the statute provides shall be made for possession into a demand for rent. How did it reach this conclusion? In arriving at it, it says: "While the statute names no period of time to elapse after the service of notice to vacate, to be allowed the tenant, yet the question remains, whether it

was intended that the notice was to serve as an actual and immediate forfeiture of the lease the instant it was served, or whether it was given in order to give him a reasonable time in which to pay or to vacate, and as a notification that the forfeiture would be claimed.   *   *   *   If the object of the legislature was to declare that all rights were forfeited by non-payment, it seems reasonable to suppose that they would have given the lessor the right to immediate eviction [which they did do]. What object the service of notice to quit could have, if he had this right, it is hard to perceive. To hold that the mere service of the notice gave this right is to attribute more potency to the serving of a paper than to the failure of payment. The notice could not have been to apprise the lessee that rent was due, because he was bound to know this from his contract. The remedy is not a summary one. *Crow* v. *Morris*, 15 Ga. 303. The conclusion is irresistible that, in requiring notice, it must have been for some purpose, and this purpose must have been to give the tenant time to fulfill his contract before suit would be brought."

The conclusion reached is in direct conflict with the statute, and is based upon premises that are not true. The statute does not provide that any notice shall be given the tenant. It provides that a tenant, in cases like this, who (1) shall fail or refuse to pay rent for the land demised to him when due, and (2) after *demand* made in writing for the *possession* thereof by the landlord shall refuse to quit such possession, shall be deemed guilty of an unlawful detainer. In that event what is the remedy provided by the statutes for the landlord? An action of unlawful detainer for the recovery of the land demised. What is the relief? A judgment for possession (Mansfield's Digest, §§ 3351, 3361 and 3362). Upon the failure or refusal to pay the rent when due the tenant forfeits the right to the possession, and the landlord becomes entitled to it. This is the reason he is authorized by the statute to demand it. He would have no right to do so, if he was not entitled to it. Having this right, the statutes provide that he may demand it, and, in the event the tenant refuses to deliver it, sue for and recover it in an action of unlawful detainer. This shows clearly that the

object of the statutes is not to enforce the payment of the rent, but the demand for possession.

The rent in this case was due on a specified day, and no demand for it, or notice, was necessary, or required by the statute. The tenant was informed by his contract when it would and did become payable. Hence the statute did not provide that any demand for rent shall be made, or notice that it is due shall be given; and it is not necessary in any case, unless made so by the terms of the contract of the landlord and tenant, as where the rent is made payable on demand.

In Minnesota a statute provides: "When any person holds over any lands or tenements   *   *   *   after the termination of the time for which they are demised or let to him,   *   *   * or after any rent becomes due, according to the terms of such lease or agreement,   *   *   *   the party entitled to possession may make complaint thereof to any justice of the peace of the county, and the justice shall proceed to hear, try and determine the same," etc.; and further provides: "If, upon the trial of any complaint under this chapter, the justice or jury shall find that the defendant or defendants or either of them, are guilty of the allegations in the complaint, the said justice shall thereupon enter judgment for the complainant to have restitution of the premises," etc.  Genl. St. ch. 84, §§ 11, 9.  This statute clearly means that an action of unlawful detainer may be be brought against the tenant, if he fails to pay the rent when due and thereafter holds the demised premises, and is the same as the statute under consideration in that respect.  In construing the Minnesota statute in *Spooner* v. *French*, 22 Minn. 37, the court said: "The statute, section 11, gives the right to these proceedings (an action for possession by the landlord) when the tenant holds over   *   *   *   after any rent becomes due.  No other thing is required by the statute.   *   *   *   No demand of the rent is contemplated by the statute."  See *Wright* v. *Gribble*, 26 Minn. 99, to the same effect.

In the case before us the parties agreed upon the conditions upon which the tenant should hold the land let to him, and that was, upon payment of the rent at the times stipulated.   The statutes of this state provide for the protection of the landlord, in such cases, against the holding of the

land by the tenant after he has failed to comply with the conditions. They provide, as before stated, that the landlord may recover the land of the tenant, in the event he fails or refuses to pay the rent when due, and refuses to deliver the possession of the land after a demand in writing therefor by the landlord. The statutes impose no other condition upon the landlord's right to recover. This court has, however, added another in this case, and that is, the failure or neglect of the tenant to pay the rent, according to the opinion of two judges, within a reasonable time after the demand for possession, and, according to the opinion of one, before the commencement of an action by the landlord to recover the land. In adding the last condition the court, in my opinion, has departed from the clear language of the statute, and assumed legislative power.

There was no waiver of the forfeiture in this case by the landlord. The forfeiture accrued on account of the non-payment of the rent due on the 9th day of November, 1890, for the months of November and December in 1890, and of January in 1891. The amount due them, in advance, for these three months, was $17.50. It appears that no payments were made for rent after the 9th of November, 1890. The tenant offered to pay the $17.50 after that time, but the landlord refused to accept it. Notwithstanding these facts, this court relieves the tenant of the forfeiture, and cites *Little Rock Granite Co.* v. *Shall*, 59 Ark. 409, to support its action. In that case this court held that a court of equity could relieve a tenant, upon equitable grounds, of a forfeiture which it was *stipulated in the lease* the tenant should suffer in the event he failed to perform his covenants. In this case the forfeiture is statutory, and no court can lawfully relieve against it; for to do so, as said by Mr. Justice Matthews in *Clark* v. *Barnard*, 108 U. S. 436, "would be in contravention of the direct expression of the legislative will." *State* v. *McBride*, 76 Ala. 51, 59, 60.

My conclusion is that appellee, Parker, or his grantees, are entitled to the possession of the land in controversy.

HUGHES, J., concurs with me in this opinion.